UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO STATE SNOWMOBILE ASSOCIATION; and THE BLUERIBBON COALITION,<br><br>        Plaintiffs,<br>     v.<br><br>UNITED STATES FOREST SERVICE; U.S. FOREST SERVICE, Northern Region; CLEARWATER NATIONAL FOREST; FAYE KRUGER; Regional Forester, Northern Region; RICK BRAZELL, Forest Supervisor, Clearwater National Forest,<br><br>        Defendants.<br>and,<br><br>GREAT BURN STUDY GROUP, IDAHO CONSERVATION LEAGUE, and THE WILDERNESS SOCIETY<br><br>        Defendant-Intervenors | Case No.  3:12-CV-447-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to approve a consent decree filed by the parties

and an objection thereto filed by the intervenors.  The motion is fully briefed and at issue.

For the reasons explained below, the Court will conditionally approve the consent decree.

## LITIGATION BACKGROUND

Plaintiffs Idaho State Snowmobile Association and The BlueRibbon Coalition

represent motorized recreationists.  They have sued the Forest Service, challenging the

2011 Clearwater National Forest Travel Plan. To support the Travel Plan, three

environmental groups – the Great Burn Study Group, the Idaho Conservation League,

and the Wilderness Society – have intervened in the case.

The Clearwater National Forest contains 950,311 acres. It is governed by the

1987 Clearwater Forest Plan that identifies 198,200 acres of recommended wilderness

areas (RWAs). Under the 1987 Forest Plan, the Forest Service is to "manage each

[RWA] to protect its wilderness character." Over the years, users of motorized vehicles

created routes through repeated public travel within the RWAs.

In 2005, the Forest Service promulgated a Travel Management Rule that generally

prohibited motor vehicle use on roads not explicitly designated for their use. *See* 36

C.F.R. § 261.13. Accordingly, the Clearwater National Forest began in that same year to

draft a detailed plan – a Travel Plan – to govern motor vehicle use. They received over

4,000 public comments, and released a draft EIS in 2009. In 2011 – six years after the

process started – the Forest Service released the ROD and FEIS that now constitute the

Travel Plan before the Court.

The Travel Plan largely prohibits motorized vehicles in the RWAs (except for one

small exception). The Forest Service justified this ruling by concluding that the "increase

in capability and popularity"of motorized vehicles will put "increased pressure" on

RWAs "unless those uses are restricted." *See AR 3343* at p. 38. Furthermore, the

"continuing or expanding use of vehicles will do nothing but reduce the chances of these

areas being designated as Wilderness. Accordingly, I am deciding to restrict all

motorized use  . . . in [RWAs] with the exception of summer use on the Fish Lake Trail."

*Id.*

The plaintiffs, whose members used motorized vehicles in the RWAs under the prior management plan, brought this lawsuit seeking to overturn the 2011 Travel Plan. One of their main challenges is that the Forest Service, in adopting the 2011 Travel Plan, applied a guidance document created by the Forest Service's Northern Region to manage RWAs.  Plaintiffs allege that this guidance document was never adopted pursuant to NEPA and NFMA, and yet played a crucial role in the Forest Service's decision to restrict motorized travel in the 2011 Travel Plan.

In March of 2014, the Court granted plaintiffs' request to conduct discovery into the creation and effect of the Northern Region's guidance document.  In the months that followed, the parties – that is, the plaintiffs and the defendant Forest Service – negotiated, and eventually entered into a consent decree that they now present to the Court for approval.  The defendant-intervenors object to the consent decree and ask the Court to deny approval, or to approve a modified version of the decree.

The consent decree would vacate and remand to the Forest Service that portion of the Travel Plan pertaining to motorized and over-snow access for RWAs.  While the Forest Service reconsiders its ruling, those uses in the RWAs would be governed by the 1987 Forest Plan that contained no express prohibitions.

The Forest Service explained why it entered into the consent decree in the Declaration of Regional Forester Faye Krueger.  She explains that the guidance document issued by the Northern Region – designed to offer suggestions for the consistent

**Memorandum Decision & Order – page 3**

treatment of RWAs – was "never intended to establish new policy or binding direction."

*See Krueger Declaration (Dkt. No. 48-3)* at ¶ 5. The guidance document, however, did

not produce the results the Forest Service sought, at least in Krueger's analysis: "It has

recently come to my attention, however, that there is some confusion regarding the

guidance document with some Forests misinterpreting the guidance as providing

management direction for RWAs." *Id.* at ¶ 6. The Forest Service is not conceding that it

made an error, but Krueger ultimately concluded that "[r]emand would allow the Forest

Service to make a decision regarding the RWAs based on a record which clearly reflects

the applicable management direction." *Id.* at ¶ 7. The Forest Service represents that it

would "make its best efforts to issue a new decision" in about 60 days.

       The defendant-intervenors object to the consent decree provision that vacates the

current Travel Plan and restores the management policy in the 1987 Forest Plan. They

argue that the 1987 Forest Plan allows the very motorized use that the Forest Service

found destructive in the 2011 Travel Plan ROD. They also argue that if the Forest

Service decides to make changes to the 2011 Travel Plan, the public notice and comment

period, along with other NEPA procedural requirements, will cause delays for years,

during which time motorized use will continue unabated. They ask the Court to keep the

2011 Travel Plan in effect during the remand, or at least put a 60-day limit on the Forest

Service to make a decision during the remand period to mitigate the harm from vacating

the Travel Plan.

## ANALYSIS

A consent decree is a hybrid; it contains an agreement between the parties and seeks relief from the Court. *Conservation Northwest v. Sherman*, 715 F.3d 1181. 1185 (9th Cir. 2013). Even though the parties agree to certain court-ordered relief, the Court may not have authority to approve that relief if it "conflicts with or violates" the law. *Id.* On the other hand, a consent decree typically represents "an amalgam of delicate balancing, gross approximations, and rough justice," and "need not impose all the obligations authorized by law." *Id.* (quoting *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir.1990)).

Two recent decisions delineate the scope of the Court's authority to approve consent decrees. In *Sherman,* 715 F.3d at 1188, the consent decree was found improper because it constituted a "substantial and permanent" amendment to agency rules. In that case, environmentalists challenged a multi-agency plan to manage logging in the Pacific Northwest. After the district court found NEPA violations, but before it imposed a remedy, the parties entered into a consent decree that imposed permanent changes to the multi-agency plan. An intervenor logging company objected, claiming that NEPA required that any changes to the plan required a period of time for public notice and comment, and that the consent decree ignored this requirement. The Circuit agreed and struck down the consent decree. *Id.*

In contrast, the consent decree in *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 672 F.3d 1160, 1167 (9th Cir.2012) was found to be proper because it "merely temporarily restore[d] the status quo ante pending new agency action and [did]

not promulgate a new substantive rule." In that case, environmentalists challenged agency fishing regulations, one part of which limited how many loggerhead turtles the fishing boats could take in their nets. Midway through the litigation, the parties entered into a consent decree that (1) vacated that portion of the new rule setting the turtle limit, (2) temporarily re-imposed the prior rule until the agency could reconsider its new rule, and (3) remanded the case to the agency to reconsider the new rule. *Id.* at 1164. An intervenor fishing company objected, claiming that by vacating the new rule, the agency had made a substantive change to the rule without engaging in the required public notice and comment. The Circuit disagreed, finding that the new rule was only temporarily vacated while the agency reconsidered it, and that the consent decree "leaves [the agency] free on remand to fashion a new rule . . . without imposing any substantive requirements on its terms." *Id.* at 1168.

At first glance, this case appears more like *Turtle Island* than *Sherman.* The consent decree here merely temporarily restores the status quo ante and does not promulgate any new rule. Like the consent decree in *Turtle Island*, this decree imposes no substantive constraints on the agency's reconsideration of the rule.

But as *Sherman* made clear, each consent decree is evaluated on its own merits, and there are some unique features to this one. First, it appears here that if the Forest Service decides to keep the 2011 Travel Plan intact, without changes, the process might be done within 100 days or so. On the other hand, if changes are necessary, the prior experience of public notice and comment dragging out over six years signals that a new Travel Plan might not be completed for years.

Moreover, the Forest Service has not admitted error but only confusion. So the 2011 Travel Plan has not yet been branded as violating any statute or regulation either by the agency or by the Court. There is therefore no urgency to vacate it now, especially if the Forest Service ultimately keeps it intact and renders that decision within just two or three months. It makes little sense to vacate the 2011 Travel Plan now, and then relatively quickly reinstate it, when there has been no finding or admission that it violates the law. *See California Communities Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (holding that in examining consent decrees, courts should consider the seriousness of the error allegedly made by the agency and the potential disruptive consequences of an interim change). These circumstances would present – under the *California Communities* analysis – no serious error by the agency and potentially disruptive consequences of vacating and then reinstating agency action. That warrants denying the request to vacate.

This analysis would change, however, if upon reconsideration the Forest Service finds flaws in the 2011 Travel Plan requiring changes. At that point, a strong argument could be made that the Plan cannot remain intact and should be vacated, reinstating the 1987 Forest Plan management scheme. It would appear that under the *California Communities* analysis, the error by the agency – creating an illegal Travel Plan – would be so serious that it would outweigh the disruptive effect of vacating the Plan. But the Court need not make that finding now. If the Forest Service finds the 2011 Travel Plan flawed, the parties can come before the Court seeking to vacate the 2011 Travel Plan at that time.

**CONCLUSION**

In conclusion, the Court will conditionally grant the motion to approve the consent decree. The condition to approval is that the parties accept the following limitation to its ruling. The Court will approve the consent decree to the extent it seeks remand to the Forest Service to reconsider the 2011 Travel Plan. The Court will not vacate the 2011 Travel Plan at this time. If the Forest Service decides that the 2011 Travel Plan is flawed and that changes are necessary, the parties may return to the Court to seek to vacate the 2011 Travel Plan at that time. The Court will give the parties 20 days to determine whether they will accept this conditional approval of the consent decree.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to approve consent decree (docket no. 48) is CONDITIONALLY GRANTED. The condition to approval is that the parties accept the following limitation: The Court will approve the consent decree to the extent it seeks remand to the Forest Service to reconsider the 2011 Travel Plan. The Court will not vacate the 2011 Travel Plan at this time. If the Forest Service decides that the 2011 Travel Plan is flawed and that changes are necessary, the parties may return to the Court to seek to vacate the 2011 Travel Plan at that time.

IT IS FURTHER ORDERED, that the parties inform the Court in writing within 20 days from this decision whether they will accept this conditional approval of the consent decree.

IT IS FURTHER ORDERED, that the motion to file sur-reply brief (docket no. 54) is GRANTED.

DATED: February 26, 2015

B. Lynn Winmill
Chief Judge
United States District Court